Good morning. May it please the Court, Katerina Rost on behalf of the Petitioner, if I would like to reserve two minutes for rebuttal. Respondent's petition is based on the denial of a motion to reopen and remand, which he filed after he became eligible for cancellation of removal following the Supreme Court's decision in Pereira v. Sessions To be eligible for cancellation of removal, an applicant must establish good moral character, tenure, presence in the United States, and that a qualifying relative would suffer exceptional and extremely unusual hardship in the event that the applicant is not allowed to remain in the United States. To be successful in a motion to reopen and remand to the Board based on eligibility for new relief, Petitioner must show prima facie eligibility for that underlying relief, which only requires a showing that there is a reasonable likelihood that statutory requirements have been satisfied. Petitioner does not need to show conclusively that he's eligible. He does not need to establish absolute certainty, only that there is a reasonable likelihood, and that's what prima facie showing means. That's what is required in his application, and he has to show that essentially it is worthwhile for him to develop the record further. There are countless hardship factors ignored by the Board in their decision. There are four U.S. citizen children involved in this case. There is Esteban, who is 11. There is a stepdaughter, Aileen, who is 13. There is Dulce, who is 8, and Mateo, who is 2. These children are acculturated to life in this country. Esteban could probably not accompany Petitioner to Guatemala because he lives with his mother. Petitioner supports him through child support payments. Petitioner supports by himself through his own hard work a household of five. He is the main source of emotional and financial support for all four children. His wife has no status. The U.S. citizen kids would possibly be rendered homeless and hungry if he had to leave because Petitioner could not provide for them from Guatemala. Would the children go to Guatemala? I couldn't tell from Lopez's affidavit whether the children would accompany him to Guatemala if he were removed or whether they would stay here. Well, we have not really established that. My position is that whether the children accompany him or stay here, they would suffer horrendously. Whether they lose his income because he leaves by himself and they remain here with their undocumented mother or accompany him to Guatemala, where delinquency is rampant and there are no opportunities for children to live peacefully, we believe we could satisfy the prima facie standard and most certainly be able to establish an exceptional and extremely unusual hardship. It is our position that these factors were not considered by the board. These are factors that were set out by the board itself in matter of Rosinas. We do understand that the board has broad discretion to grant or deny motions to reopen, but it is not free to abuse that discretion. The board cannot issue decisions that are irrational or contrary to law. A 42B application is a discretionary form of relief. The immigration judge is the only entity who is to make eligibility determinations in the first instance in applications for cancellation and removal. This court has previously held that in order for motions to reopen that are filed for purposes of obtaining discretionary relief, we have to show that the applicant was denied the opportunity to present the application in his first hearing, which is exactly what happened in Mr. Lopez's case. He could not show the 10 years of physical presence before Pereira was handed down. For the board to deny this petitioner the opportunity to apply for cancellation and removal in the first instance is completely impermissible. It is completely it is an act that is ultra virus and resulted in a due process violation. The board's function is to review the judge's decisions, not to step in to make those decisions. If we were to agree with you on this issue that there was an error on hardship, should we go ahead and decide the issue or should we hold this case for Liz Chavez? I believe that this case should be should be remanded back for the board to direct that the judge hold an application hearing on petitioners 42B application. But will the Supreme Court's decision in Liz Chavez affect the 10 years requirement? Well, it is my position that it potentially could. But under Pereira, the decision is quite clear that and I and I believe that board, even in this case itself, agreed that he has most likely already shown 10 years. But it might be it might be opportune to to hold it until Chavez is decided. So concluding the issue of 42B eligibility, it is my position that petitioner had to show reasonably that it is reasonably likely that he will meet the statutory requirements and that his relief this relief was previously not available to him. And he has met both requirements. Have the parties made any attempt to mediate this case? No, we have not. There was no there was no government attorney assigned to this case for the longest time. So no, we did not. Turning to respondents application for withholding of removal, it is it is my position that he suffered the most egregious persecution when he was repeatedly and systematically regularly and inhumanely beaten by his father when he was a very young child. The father beat him and the mother to exert his dominion over them. He mistreated them because he viewed them as his own property to treat as he pleaded as he pleased. This is an endemic problem that's been well documented in Guatemala. The father knew that nobody could intervene to stop him, that it was his right to abuse and hit a respondent when he was just a little child. This court has held that physical violence amounts to persecution and has also held that age is an important consideration when determining that when when the harm and the quality of harm when it rises to the level of persecution for. Judge Gould, if I could ask you a question, I'll add some time to you to make up for interrupting you. The question I have is, can victims of criminal conduct be a particular social group under the under the immigration laws? Your Honor, persecution, the conduct that the conduct that brings on violence that applicants for asylum suffer is always to a certain degree a criminal conduct. It is just so egregious and it goes unpunished and it's endemic in the country and and and it is considered to be it is considered to be proper and well accepted. And that's what brings it out of the realm of criminal conduct and makes it makes it persecution. So the conduct itself is not is not very is not very different. It is the way that this criminal conduct of beating a small child that rises to the level of persecution because because it's such a widespread and it's it's such a widespread problem in Guatemala and it's committed with complete impunity and there is no recourse for for victims. The country of Guatemala has has struggled with this problem and has attempted to to to answer this problem, but they have not have not had any success. So it is the conduct the conduct should have been should have been criminalized. It wasn't criminalized by the Guatemalan authorities because because they're inept, because they're not capable of doing it. And that's what makes it conduct that that that that results in harm that rises to the level of persecution. So so it's really just so so I do believe that that it is it is it is appropriate and I do believe that that's what petitioner showed in this case. With regards to to to the board and and Respondents Council relying on matter of a B, I don't believe that the decision in that in that case is warrants warrants difference, be it Chevron difference or any other difference. The matter of a B really does not rely on on decades of precedents of its own precedents and decades of precedents established by the Ninth Circuit. Asylum law has evolved over over decades and and it cannot just be brushed aside with a with a stroke of a pen and matter of a B. It is not based on what has been established to date. It also it flies flies in the face of decades of precedent, both from the board and especially from the Ninth Circuit of Court of Appeals, which has held that family is a quintessential particular social group. So it hasn't just all of that. That was a finding that was made after after many years and many significant considerations of. Of looking at the asylum precedent from from every angle again, it's not something that can just be brushed and turning to the to respondents well founded fear based on his religious beliefs. Petitioner testified credibly that he has become a very religious person and that he hears harm of the hands of the criminal gangs in Guatemala, who are sure to perceive them as a direct enemy when he evangelizes to bring people to the church in his community upon his removal to Guatemala. So this is something that he has been doing for years and he has credibly testified that he would continue that work and this work in Guatemala would be in direct would be in direct opposition to the gangs agenda. The gangs we have to understand are are spread throughout Guatemala. They have they are a very powerful entity. They're present throughout petitioner would be would be returning back to to his little village. He came from and we know that there is a gang presence there considering this the harm in the aggregate without a problem that are endemic in Guatemala. I believe he has shown that he was. He has established well founded fear of future persecution. It is this fear of harm that makes petitioner eligible for humanitarian asylum. This is the other serious harm that meets his eligibility for humanitarian asylum. With the past persecution, of course, having been the abuse that he suffered at the hands of his father. So if I can interject, I should just mention that the clock, which keeps running, shows over time by two minutes, 40 seconds. And I'm going to give you a little extra time for a bottle, even though your time's up. But but we need to bring your initial argument to a close so that the government can say its part and its view on this. And you can try to keep some powder dry on your argument to make a rebuttal. Yes, thank you very much. Now, for the government, we have Mr. Darrow. Yes, Your Honor. May it please the court, Joseph Darrow on behalf of the government. Good morning, Your Honors. Thank you for the opportunity to speak here in these trying circumstances over Zoom. The court should affirm the decision of the Board of Immigration Appeals denying Mr. Lopez Perez's application for withholding of removal and protection under the Convention Against Torture and also denying remand for consideration of cancellation of removal. Substantial evidence supported the age. Hold on one minute, Mr. Darrow. The clock was not set properly. You can go ahead. I'm going to add three minutes of rebuttal for a petitioner. Thank you. So we'll give you a little extra time. OK. Thank you, Your Honor. Substantial evidence supported the agency's findings that petitioner is not likely to suffer persecution on account of protected ground or torture if he is removed to Guatemala. The agency also did not abuse its discretion in denying remand because the case law is that the petitioner has to submit evidence showing prima facie eligibility for the relief for cancellation of removal in order to warrant remand. And here he did not. Regarding you speak to whether the agency considered adequately the financial hardship to the four U.S. citizen children that are at issue here. Well, Your Honor, the the threshold problem there is that the petitioner only submitted a very conclusive affidavit. He submitted no real evidence of the financial hardship. But the affidavit speaks about the children and the fact that he is the sole financial support and that the wife is not making any significant amount of money. The affidavit says all those things. And I don't see anywhere where the agency addressed that. Your Honor, the agency relied on its precedent showing that claims of generalized hardship based on removal, which includes separation financially, are insufficient to show the very high bar of exceptional and extremely unusual hardship. No one is denying that, you know, having one's parent removed is not hardship. It definitely is. You can't say otherwise. But the bar here is very high and it requires an evidentiary showing of exceptional and extremely unusual hardship. And normally in cases where somebody meets that bar, they're they're providing evidence of the actual financial hardship, not just saying, well, you know, the separation could could pose some financial hardship. They're they're providing evidence that we know that about. And Eliza Rebus, that the affidavit was more detailed there. No, Your Honor, I don't know exactly what the the affidavits stated in that case. Because their financial support for children was considered and was enough to be a hardship, wasn't it? Yes, I believe so. It was. But here there just wasn't sufficient evidence of that financial hardship. The board, you know, looked at it and compared it to its precedent and said, this is just a generalized conclusory claim of hardship. And the board is held to a very deferential standard here unless it's acted arbitrarily or irrationally or contrary to law. Then the law is that the court should defer to what the board looked at and determined. The board recognized, of course, that the petitioner didn't have to conclusively establish eligibility. It recognized that all was required was a reasonable likelihood, but it relied on its precedent showing that, you know, conclusory allegations absent further evidence don't reach that far of establishing a reasonable likelihood. Do you know, Mr. Darrow, what the what the affidavit showed in that Cabrera-Alvarez case, where the board described hardship to children based on being separated from a parent is heart wrenching. But I think their phrase was sadly a sadly common hardship that did not rise to the level of exceptional in unusual circumstances. Do you know what more, if anything, was was submitted in that case than was submitted here? My apologies, Your Honor. I do not. I can look into it, though, and provide supplemental briefing if we have additional evidence or additional information regarding what specifically was stated in that affidavit. Well, aside from that, if you look at the petitioner's affidavit here, he does talk about the the hardship to his children. And the board obviously read the affidavit, but doesn't discuss it in great detail. I mean, they say they acknowledge that the affidavit alleges generalized hardship. But isn't this a pretty a pretty skinny response to that, to the information in the affidavit? There's not much. Is it not too conclusory? I think from the board's perspective, you know, they would say that they were just responding to a conclusory allegation. And, you know, they receive a lot of very, you know, conclusory affidavits seeking such relief. And the case law suggests that they don't need to write an exegesis on every bit of evidence. All they need to show is that they received the evidence, they looked at it, they compared it to the law, and they reached their determination on that basis. They seem to assume that there are certain showings that have to be made. I mean, I'm looking at the board's decision here, and it says, look, you didn't give us information about the children's health or their education or any other factor. And so they seem to be saying that that you have to focus on, if not those two, the education or the health, that there's some specific showing that has to be made before they will seriously consider whether it constitutes a prima facie showing. Yes, Your Honor. I don't know if there's a specific showing that has to be made. There just has to be more evidence, more details on those points. It's not enough simply to say, you know, I'm going to be removed and that could have financial consequences because I will be separated from my children, which of course is unfortunate, but that's kind of what unfortunately generally happens, that you need something more detailed to reach the exceptional and extremely unusual bar that is required to qualify for cancellation removal. Could I ask you if the government would be open to mediation in this case? Yes, Your Honor, I believe we would. And I apologize if the failure to do so before was at all due to the government. You know, there was the person who briefed this case went out on parental leave and I'm just kind of pitch hitting, but I don't see why we wouldn't why we would oppose. It seems, if I'm right, that he doesn't have any significant criminal history and has four U.S. citizen young children. And this seems like a case that isn't a removal priority under the interim guidelines. Am I right? Well, under the new guidelines, it's unclear that determination hasn't been made, although if he wants to request consideration for not being a priority under the guidelines, he's more than welcome to do that directly to the agency. But to address your primary point, Your Honor, I don't see any reason why we wouldn't be able to consider mediation of this. Let me just say that I'm also interested in whether mediation can lead to a resolution, because as I think as the government's argued, the standard for extreme and unusual hardship is a very tough one. But still, there are all the American citizen children and other considerations here that should be at least weighed and evaluated carefully. Yes, Your Honor. Noted. And I would also add to Judge Friedland's point before that, if the court is considering reversing on the point of hardship, that we would ask that the court does hold this case pending the outcome in the Nez Chavez case, which because the board alternately relied on the lack of 10 years of continuous presence, the outcome of that case in the stock time rule would affect whether or not the petitioner would also be qualified for cancellation of removal here. And I see my time is starting to run out. Just to address briefly the petitioner's application for withholding regarding past persecution, the problem was that they're just granted, you know, no one's denying that his father was abusive, but there's no evidence that this was connected to a protected ground. There was no nexus. The father was being abusive, based on the evidence, primarily because he was drinking, not because the petitioner was a member of his family. And that's the proffered particular social group. And to address future persecution, there is no evidence that the gangs or the narco-traffickers are targeting people for persecution on the basis of religious affiliation. The evidence suggests that almost 90% of people in Guatemala are Christian, whether Catholic or Protestant. And the petitioner was unable to point to either his own experience or the experience of anybody similarly situated to show that by going to Guatemala and speaking out about his faith, he was likely to draw persecution from the gangs or criminals there. And I see my time is up, so unless there are any other questions... Counsel, we're giving the petitioner extra time. So if you need another two minutes for your argument, you can take it. But you don't need to spout off more stuff if you feel it's unnecessary. Thank you, Your Honor. I'll keep my spouting to a very minimum. I didn't address the CAD claim. The petitioner submitted generalized country conditions evidence, but the case law from this court establishes that absent particularized evidence showing that the petitioner himself is likely to be tortured, that general country conditions evidence don't establish a likelihood of torture. And with that, I will conclude my spouting and ask you to defer to the judges of the Board of Immigration Appeals. And thank you, Your Honors, again very much and wish you well. Thank you, Counsel. And now we'll go back to petitioners. Counsel, what's on the clock right now? And maybe nothing, but let's add... Judge, I'm trying to reset it right now. What do you need for your argument? Two minutes, please. Okay, we'll add two minutes. Done. As formal as I'm capable of. Thank you. Thank you again. Yes, we would like to do a mediation on the remand for 42B purposes. We can await the decision in Ms. Chavez to have that accomplished. We set out details in the sworn declaration to present the kind of a case that we would like to present in detail. The immigration court is the only venue to present cancellation of removal applications in the first place. We established through the detailed declaration that it is worthwhile for us to develop the record further if Ms. Chavez permits us to continue to show eligibility based on the 10 years of physical presence. The hardship factors presented in the declaration are clearly meet the standard that the board considered in Resinas. None of the children in Resinas had any exceptional serious hardships, no physical disabilities, no educational challenges. All the children in Resinas were perfectly fine. So that is what the board needed to have looked at to consider the appropriate handling of this motion to remand. The board, since the issuance of Pereira, had remanded a score of other applicants' cases back once they became eligible for cancellation of removal. Some of those decisions were attached to the petitioner's brief. They clearly established that the handling of petitioner's motion to remand was really arbitrary and contrary to law and contrary to the board's own precedent. Turning to the withholding claim, the fact that the father was sometimes drunk when he abused petitioner, whom on one occasion he hit with an axe when he was just a boy of seven, is completely irrelevant. He was a horribly abusive grown man who treated his child as his property and he exerted his dominion and he felt he was free to do that when he felt like it. If he was drunk sometimes because of that, it's completely, really almost irrelevant. Counsel, I think we have your argument probably well in mind and you're over the time of the extended time. I mean, because of all our other cases, I think we are going to have to bring this to a close. And I just want to say the court really appreciates the arguments of Ms. Ross for the petitioner and of Mr. Darrow for the appellee. You both presented excellent advocacy for your clients in the highest traditions of the bar. And therefore, we're going to thank you once more. I hope you stay safe and we're going to submit this case at this point. And if the panel decides to issue an order calling for mediation, we'll send that out soon. Thank you very much for the opportunity. Thank you and have a nice day. Thank you. Stay safe. Thank you.
judges: Gould, Friedland, Ericksen